```
                 UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF NORTH CAROLINA
                      SOUTHERN DIVISION
_____
                              )
UNITED STATES OF AMERICA,     )
                              )
                              )   7:17-CR-129-1
         vs.                  )
                              )
DAVID KIRTON,                 )
              Defendant.      )
_____)


              WEDNESDAY, OCTOBER 10, 2018
         SENTENCING HEARING/REVOCATION HEARING
         BEFORE THE HONORABLE TERRENCE W. BOYLE
            CHIEF UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

On Behalf of the Government:

TIMOTHY SEVERO, ASSISTANT U.S. ATTORNEY
U.S. Attorney's Office
New Bern Avenue, Suite 800
Raleigh, North Carolina  27601


On Behalf of the Defendant:

DANIEL DONAHUE
Donahue Law Firm, PLLC
P.O. Box 1721
Elizabeth City, North Carolina  27906




                AMY M. CONDON, CRR, RPR, CSR
                  Official Court Reporter
                 United States District Court
                   Raleigh, North Carolina
            Stenotype with computer-aided transcription

<mark>2</mark>

```
 1              (Wednesday, October 10, 2018 commencing 10:30 a.m.)
 2                        P R O C E E D I N G S
 3            THE COURT:  David Kirton.
 4            MR. DONAHUE:  Good morning, Your Honor.
 5            THE COURT:  Good morning.
 6            MR. DONAHUE:  Your Honor, after discussing this
 7   matter with the Government, we ask the Court to consider giving
 8   us just a little bit more time this morning to discuss this
 9   case with my client.  We just had some negotiations going back
10   and forth and kind of changes things a little bit.  Just need a
11   few minutes to discuss it.
12            THE COURT:  Okay.  He's got a felony charge on
13   sentencing and a revocation.
14            MR. DONAHUE:  That's right.
15            THE COURT:  Okay.  I'll let you come back this
16   afternoon at 2:00.
17            MR. DONAHUE:  That'll be great.
18            MR. SEVERO:  Thank you, Your Honor.
19            MR. DONAHUE:  Thank you, Your Honor.
20               (The proceedings concluded at 10:31 a.m.)
21                        *       *       *
22               (The proceedings commenced at 2:00 p.m.)
23            THE COURT:  Are you still here with David Kirton?
24            MR. DONAHUE:  Yes, Your Honor.
25            THE COURT:  Are you resolved now?
```

<mark>Case 7:17-cr-00129-FL   Document 102   Filed 12/05/18   Page 2 of 16</mark>

```
 1              MR. DONAHUE:  I believe so, Your Honor.
 2              MR. SEVERO:  We're ready to proceed, Your Honor.
 3              THE COURT:  Okay.  Mr. Kirton, do you want to say
 4   anything about your sentence?
 5              THE DEFENDANT:  Yes, sir.  I pretty much want to let
 6   you know that I came home from federal prison the first time,
 7   entered a halfway house, and I got my CDLs.  Well, I received
 8   my CDLs the same week, and I started working in the log woods
 9   driving trucks.  And I went from driving trucks to got my first
10   income tax when I filed both my daughters, and I received about
11   $9,000, and I opened up -- and bought my own truck, what is it,
12   a 1998 International Cabover.  And I had my aunt help me start
13   my LLC, got my EIN number, and I started driving for myself.
14              And pretty much driving trucks and running the
15   business is two completely different things.  You're going to
16   run across bumps and stuff like that, and I ran across a lot of
17   hard times with the trucks from three tires burning out in one
18   week to transmission problems, having to change the clutch.
19              And, Your Honor, instead of me riding the wave and
20   struggling out, I took the easy way out, and I started selling
21   heroin.  And I made a dumb -- I made a dumb choice.  I could
22   have did it a different way, and I didn't.  I wasn't thinking
23   rational, and this is the reason why I'm in front of you today.
24              I had a company.  I had a lot of people looking up to
25   me.  My mom was happy.  A lot of people was happy that I was
```

doing the right thing. And I didn't want to fail them, but in a way I still failed them by the decision I made.

And I'm just here to say what I pled guilty for, I'm guilty for, Your Honor, and I can't take that back. I just hope that I can get past this stage and change the people, places and things and get out there and do the trucking thing again because I actually started to work at the end of the situation; but I mean, by then, my wrong was already done.

And I'm not here to make no excuses. I'm just here to tell you as far as what I pled guilty for, I'm guilty for, and that's pretty much what I have to say, sir.

THE COURT: Okay. Thank you.

You have a revocation of your supervised release. You're charged with the criminal conduct here of October 2016 until April of 2017. Do you admit or deny that?

THE DEFENDANT: Yes, sir, I admit.

THE COURT: All right. The guideline range for that is 18 to 24 months. Your guideline range on your current conviction is 188 to 235 months. And the Government has a motion; is that right?

MR. SEVERO: Judge, we do. And depending on some things about an objection, we may have an additional motion. The defense has filed some objections to the advisory guideline range. Depending on how the Court may rule on that, we may have a second motion.

```
 1                THE COURT:  Do you want to be heard on that?
 2                MR. DONAHUE:  Yes, Your Honor.  So before the PSR,
 3   the draft PSR was produced, Mr. Kirton and his co-defendant
 4   submitted to a polygraph examination which isn't included at
 5   all in the PSR.  And we want to point out that Mr. Kirton's
 6   co-defendant, who put the vast amount of the weight of drugs on
 7   him, was shown in the polygraph to be untruthful.
 8                And so what we would suggest is that because he was
 9   found to be unreliable after this PSR, that the Court
10   reconsider his reliability and credibility and whether or not
11   we should accept the weight that he put on Mr. Kirton as it
12   relates to the guideline range.  It's addressed, I think, in
13   the addendum there, number 2 and 3 on page 15 of 15.
14                THE COURT:  So does he admit to any drug weight?
15                MR. DONAHUE:  Oh, of course he does.
16                THE COURT:  Give us, you know, what you concede.
17                MR. DONAHUE:  Well, what he admitted to was in a
18   protected statement, so his --
19                Our issue, I guess, is that his co-defendant tried to
20   put a ton of weight on him, thinking that when he gets
21   arrested, he's going to object to the weight because it's not
22   true.  And then if he goes to trial, not only will the
23   co-defendant get a 5K, but he'll get a Rule 35.  It was his way
24   of getting a break.  I mean, he's got a 924(c) and he's got a
25   drug charge.
```

```
 1              So David, from the get-go, said, look, I've done
 2  this, but the drug weight he's putting on me just isn't true.
 3  Please give me a polygraph.  Please give me a polygraph.  And
 4  it was part of the plea that they both had to submit to a
 5  polygraph.
 6              So we talked to Agent Wydell.  Agent Wydell talked to
 7  Mr. Severo, and they got a polygraph expert to come down from
 8  Charlotte.  He came to Elizabeth City.  He sat down with both
 9  of the defendants, and he gave them a polygraph.  Now,
10  Mr. James Mickey Harris showed to be deceptive on the
11  polygraph.
12              And the PSR says that James Mickey Harris is a
13  reliable and credible source of information, and we would just
14  like the Court to consider that he's not and he hasn't been;
15  and, you know, he's given statement after statement that don't
16  match up.  He's made statements to this polygraph expert that
17  were shown to be untrue.
18              David admits that he did sell drugs.  He admits that
19  he took Mr. Harris to New York to introduce him to a source,
20  and then Harris went up and got the drugs four times, three or
21  four times after that.  So there were five total times that
22  somebody went up, picked up drugs from New York and came home,
23  and then they sold them in Wilmington, sold the drugs.
24              But, again, that was in a protected statement that he
25  admitted to that.  It's just the enormous amount of cocaine and
```

powder and crack and heroin that Mr. Harris put on Mr. Kirton just -- he says it's just not true, and we'd ask the Court not to consider that in his guideline range.

THE COURT: A few minutes ago I asked you what is true. You know, what does he concede? You still haven't told me.

MR. DONAHUE: Well, he says that every time they went up -- and he can't remember if it's four trips or five trips. He said we can go with five because I don't want to tell a lie. He said that to the agents. He told the polygraph expert that as well. They got a hundred grams each trip, so that would have been 500 grams.

THE COURT: Of heroin?

MR. DONAHUE: Yes, sir. And then they cut it, bagged it and then dispersed it to other low-level dealers.

THE COURT: So that's a half key all told.

MR. DONAHUE: Yes, sir.

THE COURT: A kilogram means a thousand grams. 500 means half of the thousand.

MR. DONAHUE: I think there was some cutting agents used, and perhaps it became more or less; but, yes, they bought 500 grams.

THE COURT: So what's the guideline range for 500 grams of heroin?

THE PROBATION OFFICER: Your Honor, 500 grams would

1  be a base offense level -- base offense level 26, which is from
2  400 grams to 700 grams.
3           THE COURT:  Okay.  So what's the guideline range?
4           THE PROBATION OFFICER:  Just changing that guideline
5  alone, Your Honor, it would be -- instead of a 32, you would
6  have a base offense level 26.  And then he also has an
7  objection to the firearm enhancement.  So that one we haven't
8  gotten to yet, but including it, it would be a 30 minus three,
9  so looks like a total offense level 27.
10          MR. SEVERO:  Your Honor, I think there's also two for
11 leadership.
12          THE PROBATION OFFICER:  Correct.  I included that.
13          MR. DONAHUE:  Right.  And, Your Honor, as to the
14 second objection --
15          THE COURT:  You didn't give me a number.  I mean, all
16 this mumbo jumbo is fine, but I'm just trying to come up with a
17 number.
18          THE PROBATION OFFICER:  Yes, Your Honor.  As of right
19 now with the objections as they stand, the guideline range
20 would be 100 to 125 months.
21          THE COURT:  Okay.  Thank you.
22          THE PROBATION OFFICER:  You're welcome.
23          THE COURT:  So do you concede that that's the
24 guideline that you want, or do you disagree with it?
25          MR. DONAHUE:  Well, we'll agree that that was the

```
 1  weight that he was responsible for.  However, he entered into
 2  an agreement per the plea agreement that anything he put on
 3  himself wouldn't be used against him, so that was his only
 4  concern.
 5           He just -- he understands the law.  He understands
 6  that he should be held accountable for what he did, but he also
 7  feels that if you have an unreliable person and they put all
 8  this drug weight on you, then you have to throw the baby out
 9  with the bath water, then you're stuck with his own statement
10  that he thought couldn't be used against him because it was
11  protected under the plea agreement, and then you're left with
12  the actual sales that they found during the investigation.
13           THE COURT:  So are you trying to get to the point
14  where he says he sold a gram or half a gram and that's it?
15           MR. DONAHUE:  No, not necessarily, Your Honor.  I
16  mean, it would have put him at --
17           THE COURT:  Give me a break and clue me in on what
18  you're trying to do.
19           MR. DONAHUE:  A level 18 is where he was comfortable.
20           THE COURT:  And so what kind of a guideline are
21  you --
22           MR. DONAHUE:  That would have been 41 to 51 months.
23           THE COURT:  How much?
24           MR. DONAHUE:  41 to 51 months at 18.
25           THE COURT:  So that's your ideal?
```

```
 1              MR. DONAHUE:  No --
 2              THE COURT:  41 to 51?
 3              MR. DONAHUE:  That is what we would ask the Court to
 4   consider based off the information that we have.
 5              THE COURT:  Okay.  Mr. Severo?
 6              MR. SEVERO:  Your Honor, we concede that they were
 7   both given polygraphs and that the second person was untruthful
 8   about information about who his source was and the firearm.
 9   And so it puts us in a difficult position, Judge, to try to
10   figure out what's true and not.  And as I mentioned to the
11   Court, depending on where the Court finds the guideline, we
12   have a motion prepared to do either an upward departure or
13   variance to put him in a guideline that's more consistent with
14   his activity.
15              THE COURT:  Where would that be just hypothetically?
16              MR. SEVERO:  Somewhere around 100 to 120 months.
17              THE COURT:  Okay.
18              MR. SEVERO:  And, Judge, when he's polygraphed, he
19   gives information to the polygrapher.  And it's sort of, I
20   guess, as the Court can see, a shield and sword.  You know, he
21   wants to say, hey, this is truthful, but then you can't use any
22   of this stuff against me.
23              And so we would ask the Court, if the Court is
24   inclined to find that 41 to 50 month as an advisory guideline,
25   to either do an upward departure or variance to put him in a
```

1 range that's consistent, somewhere in the 100 to 120 months as
2 a minimum to whatever the corresponding number is.
3       THE COURT: So you want his guideline to be in the 41
4 to 51 range, but that he's sentenced in the 100 to 125? Is
5 that what you're saying? That's the most convoluted guideline
6 determination I think I've ever seen.
7       MR. SEVERO: I guess what I would initially ask the
8 Court to do is do an upward departure.
9       THE COURT: Are we making an academic case for the
10 irrationality of guideline sentencing? Because you're really
11 way down the road on that.
12       MR. SEVERO: Right. Judge, at the end of the day, I
13 want to make a recommendation to the Court of what sentence --
14       THE COURT: What's your recommendation?
15       MR. SEVERO: Would be a minimum sentence of 120
16 months, Judge, taking into account his 5K and all the other
17 activity.
18       THE COURT: Okay. Your turn.
19       MR. DONAHUE: Well, I didn't address the gun, and I
20 think Mr. Severo did. The polygrapher asked specifically about
21 the gun that Mr. Harris was caught with, who he claimed
22 throughout the investigation came from Mr. Kirton, and he
23 admitted that he couldn't say that it did, so we'd ask you not
24 to give him the two points.
25       But, Your Honor, we're talking about guidelines. I

1  think that all of our job here is just to make sure that, you
2  know, justice is served.  I think that Mr. Kirton clearly made
3  a huge mistake.  He was on the right path.  He had a company
4  formed.  He was working hard.  He took out some horrible loans
5  with some usurious rates.  He had one in particular that was
6  taking $171 a day from him in order to pay back the loan --
7             THE COURT:  $171 a day?
8             MR. DONAHUE:  A day.  Straight out of his checking
9  account every single day, which is a loan he got out of
10 California, but that's beside the point.  He just fell on hard
11 times.  He did something stupid, but he had the right idea.  I
12 mean, he really was going down the right path.  He had a
13 legitimate business.  He was just doing what he could.  And
14 like he said, he was just making people proud.  He had a guy
15 who worked for him.  He sold his one truck.  He bought two more
16 trucks.
17            And then in 2016, in fall of 2016, he had a childhood
18 friend who was a drug dealer who was killed.  John Mickey
19 Harris was released from BOP around the same time, so John
20 Mickey Harris came to Dave Kirton.  He knew that David knew the
21 connection in New York for the drugs, and David took him there,
22 and that's how it started.  That's why they did the five trips.
23 He was hard up for money.
24            THE COURT:  Who made five trips?
25            MR. DONAHUE:  Mr. Harris made five trips.  He did the

```
 1  introduction, and Mr. Harris made the trips.
 2          THE COURT:  He made one trip?
 3          MR. DONAHUE:  He made the initial trip, yes, sir.  He
 4  understands he's going to be punished, and he wants to take
 5  responsibility and be punished appropriately.  But, you know, a
 6  guideline range of 10 years plus his revocation, we just feel
 7  that's a little on the high end here.  That maybe, you know,
 8  six, seven years would be appropriate; but, you know, anything
 9  in the double digits is a lot for what he did, considering the
10  facts.
11          THE COURT:  Well, that's a lot of heroin, and it's
12  moving into Wilmington, which is a city that's under attack
13  with heroin.  Is that where he's from?
14          MR. DONAHUE:  Yes, sir.
15          THE DEFENDANT:  Yes, sir.
16          THE COURT:  So you do or you don't have a 5K?
17          MR. SEVERO:  We did file a 5K, Your Honor.  He gave a
18  statement initially, but it was of limited value in October.
19  Then I believe in April he was debriefed.  He did identify his
20  source.  But because of the delay in the time period, we
21  haven't been able to do anything with his source.  Judge, in
22  that recommendation that I made to the Court, I factored in
23  both the 5K and what we would contend is an upward departure or
24  upward variance.
25          THE COURT:  And the revocation is there too on the
```

1  table?

2　　　　　MR. SEVERO:  Yes, Your Honor.

3　　　　　THE COURT:  So you want a 120-month sentence.  Is

4  that what you said?

5　　　　　MR. SEVERO:  Yes, Your Honor.

6　　　　　THE COURT:  I think that's a fair sentence, and I

7  think the 5K opens the door to a sentence at that level.  And

8  under 3553(a) and all the factors and his history, I think that

9  that's appropriate.

10　　　　　On the case for 7:17-129-B0-001, I'll impose a

11  sentence on Count 8 of 100 months and three years of supervised

12  release, special assessment of $100.  He's not to violate any

13  federal, state or local law during his period of supervised

14  release.

15　　　　　On his revocation of supervised release, this

16  sentence will come first ahead of the other sentence.  He's

17  sentenced to 24 months, and the sentence on the new case will

18  run consecutive to the 24 months, and his supervision is

19  terminated with respect to that earlier case number 710-CR-28.

20  So he's got a 24-month sentence on the revocation and a

21  100-month sentence on the new crime and a new supervised

22  release term of three years.

23　　　　　MR. DONAHUE:  Thank you, Judge.

24　　　　　There was one additional thing I wanted to bring up

25  briefly.  In the objections in the addendum on paragraph 12, we

objected to the statement that the defendant is a Crips gang member. And I just wanted to point this out. It has no impact on the sentence or the guidelines.

But Mr. Kirton in 2010 was picked up on the charge that he was just revoked on. And in July of 2011, he came to Elizabeth City and testified in your courtroom against a Mr. Vincent Hill. I think he was the Government's main witness in that case. Mr. Hill got 20 years, I believe. But after that he went back to Judge Fox. Judge Fox gave him five years. He didn't give him a 5K.

And the paperwork from that court session or from his PSR was released publicly by somebody in his community and posted on social media. And from that point on, he's been totally out of gangs. He'll never be in another gang again. So we just ask that you consider ordering Probation strike that portion of the PSR because it does have an impact on his placement in BOP.

THE COURT: Do you have any objection to that?

MR. SEVERO: Judge, he associates with gang members; but other than that, I'll leave it up to the Court.

THE COURT: I'm not going to intervene in the Bureau of Prisons' management of their caseload, so I'll deny that request.

MR. DONAHUE: Thank you, Your Honor.

MR. SEVERO: May I approach with that motion?

THE COURT: You may.

UNITED STATE DISTRICT COURT

EASTERN DISTRICT OF NORTH CAROLINA

CERTIFICATE OF OFFICIAL REPORTER

I, Amy M. Condon, CRR, RPR, CSR, Federal Official Court Reporter, in and for the United States District Court for the Eastern District of North Carolina, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 5th day of December, 2018.

/s/ Amy M. Condon
Amy M. Condon, CRR, CSR, RPR
U.S. Official Court Reporter